**Stanley WHITE, Ulysses Brown and Donald Swanson, individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**WHITE ROSE FOOD, a Division of DIGIORGIO CORPORATION and the Furniture, Flour, Grocery, Teamsters, Chauffeurs & Warehousemen Union, Local No. 138, Defendants.**

No. CV 93–4837.

United States District Court,
E.D. New York.

July 8, 1996.

As Corrected Aug. 13, 1996.

Law Offices of Leonard N. Flamm by Leonard N. Flamm, Norman Mednick, New York City, for Plaintiffs.

Grotta, Glassman & Hoffman by Patricia Hardaway, David Uffelman, Roseland, NJ, for Defendant White Rose Food.

Cohen, Weiss & Simon by Richard Gilberg, Dominique Bravo, New York City, for Defendant Local 138.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In this dispute regarding the disbursement of settlement funds following a plant closing, the defendants White Rose Food, A Division of DiGiorgio Corporation ("White Rose") and the Furniture, Flour, Grocery, Teamsters, Chauffeurs & Warehousemen Union, Local No. 138 ("Local 138"), moved the Court for an order granting summary judgment in their favor and dismissing the complaint.

This written opinion follows an oral decision on the defendants' motions rendered on June 28, 1996.

### I. BACKGROUND

This action was commenced against the defendant White Rose in New York Supreme Court, Kings County, by the plaintiffs, who are former employees of White Rose at its Farmingdale, L.I., grocery warehouse, in Au-

gust, 1993. The plaintiffs were members of Local 138. The action arises from a Settlement Agreement between White Rose and Local 138, the plaintiff's bargaining agent, that followed a labor strike and closing of the Farmingdale warehouse. Under the Settlement Agreement, former employees could be placed on a preferential hiring list for other job sites and certain funds were to be disbursed to the plaintiffs or their pension fund. The amended complaint alleges that deductions were improperly made by White Rose prior to disbursing the funds, namely the employer's share of FICA, FUTA and SUI contributions.

The Settlement Agreement, executed in September, 1993, provides that White Rose will place $1,500,000.00 in an escrow account to be distributed to eligible former employees of the Farmingdale facility. The Settlement Agreement contained a binding arbitration clause and expressly states that it must be ratified by the eligible rank and file members of Local 138 who were former employees of White Rose.

Apparently "Joint Council 16," the entity that was to act as escrow agent and distributor of the settlement funds determined after the Settlement Agreement was approved, that it could not function in that capacity. Local 138 and White Rose entered into an "Amendment to Settlement Agreement," dated January 23, 1993 (the "Amendment"), that provided for payment directly from White Rose to the eligible employees, upon presentation of a list of those employees' names and a completed W–4 form for each of them. The Amendment also provided for White Rose to issue payroll checks, with all required taxes deducted, to those former employees who elected to receive settlement money. The Amendment further provided that White Rose's contribution for all payroll taxes would be deducted from the $1,500,-000.00 settlement fund. Under the Amendment, the payroll checks were to be delivered to Local 138 for distribution to the individual former employees.

The Court notes that the Amendment does not contain the language regarding membership ratification that is found in the original Settlement Agreement. It is undisputed that the Amendment was not presented to the rank and file for ratification. The plaintiffs contend that the Settlement Agreement and the parties' collective bargaining agreement required that such membership ratification be obtained.

The plaintiffs' original complaint named only the employer White Rose as a defendant and alleged that White Rose (1) wrongfully entered into an amendment to the Settlement Agreement that was not ratified by the rank and file; and (2) wrongfully deducted the employer's share of payroll taxes from the $1,500,000.00 settlement funds. In October, 1993, White Rose removed the action to this Court on the basis of diversity jurisdiction and the presence of a federal question under the Labor Management Relations Act, 29 U.S.C. § 185 (the "NLRA").

White Rose then moved for summary judgment on the theory that the NLRA and relevant case law required the plaintiffs' claims to be pursued through their bargaining representative, Local 138, in arbitration. On September 23, 1994, the Court granted White Rose's motion, reasoning that the plaintiffs lacked standing to compel White Rose to arbitrate their claim directly with the plaintiffs because the terms of the Settlement Agreement mandate that disputes will be submitted to arbitration, which is to be initiated by Local 138. At that time, the Court noted that the plaintiffs could only proceed against White Rose for a breach of the agreement under § 301 of the LMRA if they also sued Local 138 in a "hybrid suit" for breach of its duty of fair representation by refusing to pursue the plaintiffs' claims. The plaintiffs declined, and indeed expressly refused, to bring such a claim against the Union. The plaintiffs also refused to attempt resolution of their dispute through the contractual grievance/arbitration procedure by asking Local 138 to pursue their complaint, stating that such a request would be "futile."

On the plaintiffs' motion to reconsider the summary judgment decision, the Court amended its September 23, 1994 decision to state that, under the relevant case law, it is not necessary for an employee to sue its Union for breach of the duty of fair representation as a prerequisite to suing the employer

directly. The Court noted that the outcome of its decision would not change because even in the absence of a claim against the union, an employee plaintiff must establish breach of the union's duty of fair representation as an essential element of the case to be proved when suing his employer directly. An essential element cannot be proved if it is not pleaded. At that point in the proceedings, the plaintiffs refused to allege a breach of duty by Local 138 and further refused to address a request for arbitration to Local 138. The Court then adhered to its prior granting of summary judgment to White Rose because the plaintiffs failed "to show the court any precedent permitting a plaintiff employee to proceed directly against an employer in the absence of any attempt to even initial the contractual, bargained-for private dispute resolution mechanism."

The plaintiffs then brought a second reargument motion, and on May 12, 1995, the Court again revisited its prior decisions. At that time, the plaintiffs submitted a letter dated March 6, 1995 from Daniel Clifton, Esq., Counsel for Local No. 138 stating that "Local 138 does not believe that a breach of contract has occurred, and it has declined to take this case to arbitration." In an Order dated May 12, 1995, the Court vacated its decisions of September 23, 1994 and February 27, 1995 and granted leave to the plaintiffs to serve and file a third amended complaint based on Local 138's express denial of the plaintiffs' request to arbitrate the matter of the disputed employer payroll taxes.

The plaintiffs' third amended complaint alleges that White Rose violated the Internal Revenue Code and FICA statutes, as well as the Settlement Agreement, by deducting the employer contribution for payroll taxes from the settlement fund. As to Local 138, the amended complaint alleges that the union breached its duty of fair representation by (1) refusing in March, 1995 to take the plaintiffs' claims to arbitration; and (2) entering into the amendment to the Settlement Agreement in January, 1993 without presenting it to the rank and file for approval.

Both defendants move the Court for an order granting summary judgment in their favor dismissing the complaint.

## II. DISCUSSION

### A. *The summary judgment standard*

■ A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)); *see also National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990).

■ However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Western World*, 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in

favor of the non-movant, summary judgment is unavailable. *See United National,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution". *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motions for summary judgment.

**B.** *As to the claims for breach of duty of fair representation against Local 138*

■ A claim for breach of the duty of fair representation ("DFR") is an allegation that the union treated its members arbitrarily, discriminatorily, or in bad faith or acted to seriously undermine the integrity of the arbitration process. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The plaintiffs' cause of action for breach of duty of fair representation is comprised of two claims. The first is based on the union's execution of the Amendment to the Settlement Agreement, which is dated January 19, 1993 and appears to have come to the attention of the plaintiffs by March 29, 1993. The second is based on the union's March, 1995 refusal to take action on the plaintiffs' challenge to the distribution of the settlement funds.

**1.** *The DFR claim based on execution of the amendment without membership ratification*

■ Unfair representation claims are governed by a six month statute of limitations borrowed from Section 10(b) of the National Labor Relations Act. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). The Supreme Court has stated that the short limitations period for a hybrid Section 301/unfair representation claim effectuates the strong federal policy favoring rapid and final resolution of labor disputes. *Id.* at 168, 103 S.Ct. at 2292–93; *see also United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732

(1981). As a general rule, the limitation period commences when a plaintiff "knows or reasonably should know that the union has breached its duty of fair representation," or when the plaintiff first could have successfully maintained a suit based on that cause of action. *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir.1995); *Flanigan v. IBT, Truck Drivers Local 671,* 942 F.2d 824, 827 (2d Cir.1991); *see also King v. New York Tel. Co.,* 785 F.2d 31 (2d Cir.1986).

■ In the present case, the first settlement checks with the allegedly improper deductions were disbursed to the plaintiffs in February, 1993. Documentary evidence reveals that the plaintiffs had some knowledge regarding Local 138's agreement to the disputed payroll tax deductions at least as early as March 29, 1993. On that date the plaintiffs' counsel wrote to White Rose advising the employer of his belief that withholding tax had been improperly deducted and stating the following:

> [A]ny purported agreement by a union official justifying the deductions was not authorized by the individual recipients and/or rank and file.

Letter from the plaintiffs' counsel Norman Mednick, Esq. to "President, White Rose." dated March 29, 1993. Therefore, under the relevant six month limitations period, the plaintiffs had until September 29, 1993 to challenge the union's amendment of the Settlement Agreement without notice to and approval by the membership. This they did not do. Indeed, as the Court noted as late as its February, 24, 1995 decision, "[t]he plaintiffs here state emphatically that there is no breach of the union's duty of fair representation."

■ The plaintiffs suggest that their filing a claim against White Rose in August of 1993 for breach of the collective bargaining agreement should satisfy the timely pleading requirement as to Local 138. The Court disagrees. As discussed at length in the Court's February 24, 1995 decision, while it was unnecessary for the plaintiffs to join Local 138 as a party defendant in order to maintain a direct suit against the employer, an allegation of unfair representation on the

part of the union was an essential element to maintaining a Section 301 suit against the employer. *See DelCostello, supra,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91. No such claim was alleged in the plaintiffs' original complaint dated August 2, 1993. Indeed, the claim was not asserted until the plaintiffs filed their third amended complaint on March 19, 1995. As discussed below, the union's March, 1995 refusal to arbitrate does not revive a claim based on conduct with regard to executing the settlement amendment.

The plaintiffs also argue that their use of the phrase "purported agreement by a union official" in Mr. Mednick's letter to describe the Amendment demonstrates that the plaintiffs did not have sufficient information to state a cause of action against the union at that point in time. The Court notes that the plaintiffs do not indicate the date on which they became actually aware of the written Amendment to the Settlement Agreement. In any event, Mr. Mednick's March 29, 1993 letter reveals that the plaintiffs were on notice as to the conduct that forms the basis of their unfair representation claim more than two years before they acted upon it.

■ Nor is the Court persuaded by the plaintiffs' contention that its time to bring a grievance related to the Settlement Agreement is extended by a clause in that agreement providing that "This agreement and all of its terms shall expire on the 2d day of February, 1997." The plaintiffs cite no authority for the proposition that such a clause extends limitations periods for DFR claims that have been clearly announced by the Supreme Court.

In the Court's view, the plaintiffs' cause of action against Local 138 based on breach of duty of fair representation for entering into the Amendment to the Settlement Agreement without notification to or approval by the members is time barred because it was not raised within six months of the time that the plaintiffs' knew or reasonably should have known of the claim. Summary judgment is granted in favor of Local 138 dismissing the plaintiffs' claim based on the union's execution of the Amendment to the Settlement Agreement, as barred, as a matter of law.

2. *The DFR claim based on Local 138's refusal to challenge the disbursement of the settlement fund*

■ The plaintiffs' second DFR claim is based on the March 9, 1995 refusal by Local 138 to pursue the plaintiffs' challenge to the distribution of the settlement monies. This claim, which is included in the plaintiffs' March 19, 1995 third amended complaint, is clearly not time barred. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (time limit for commencement of DFR suit against a union is measured from the point in time that the union notifies the member that it will not pursue his or her claim).

Local 138 does not challenge the timeliness of this claim. Rather, the union seeks summary judgment on a theory that the plaintiffs have not and cannot plead facts to support their claim that the union's decision in March, 1995, to deny the plaintiffs' grievance constituted a breach of the DFR. It is the position of Local 138 that because the earlier claim regarding the validity of the Amendment is time barred, it cannot serve as the predicate for challenging the validity of the union's enforcement of the Amendment two years later. Local 138 states in its moving papers, "Plaintiffs' request, in September, 1994, that the Union process their complaints over the deduction of taxes from the settlement fund cannot, as a matter of law, revive their legally defunct claim over the validity of the Amendment to the Settlement Agreement." The union's argument may be summarized in other words as follows: (a) any challenge to the validity of the amendment based on the union's failure to put it to a rank and file vote is time barred and (b) the settlement funds were distributed by White Rose in compliance with that amendment; therefore (c) the union did not breach its duty of fair representation by acting "arbitrarily, discriminatorily or in bad faith" in refusing to pursue a claim by the plaintiffs that the distribution was improper. In the Court's view, the union's position is strongly supported by the relevant case law.

In the major and dispositive case of *Local Lodge No. 1424 v. NLRB,* 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), a union had been charged with unfair labor practices for enforcing an agreement that was allegedly improperly executed twelve months earlier at which time the union did not represent a majority of the employees in the bargaining unit. *Local Lodge No. 1424,* at 415, 80 S.Ct. at 825–26. The Supreme Court pondered the question of whether the *execution* of the agreement, which was allegedly unlawful but time barred as to suit, could nevertheless be relevant in determining whether conduct within the limitations period relating to *enforcement* of the agreement was unlawful. The Court agreed with the union that if a complaint based upon a time barred unfair labor practice could "infuse with illegality" an otherwise legal clause or its enforcement, then the statute of limitations would never run in such a case. *Id.* The court stated:

> It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events.

The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

*Id.* at 416–17, 80 S.Ct. at 826–27.

The present situation, like the one in *Local Lodge 1424,* is of the second variety. There is nothing to suggest that the Amendment to the Settlement Agreement, providing that White Rose's total liability under the settlement would be $1,500,000.00 inclusive of tax liability, is anything but a valid, negotiated contract clause. Nor are there facts to support a contention that the distribution of funds did not comply with the terms of the Amendment. The union annexes to its papers a summary of its payments pursuant to the Settlement Agreement as well as records reflecting the details of each individual payout. The plaintiffs contend that the Amendment is tainted by virtue of the union's failure to notify the members about it and obtain their assent to its terms by putting it to a rank and file vote. With regard to the policies underlying Section 10(b), the Supreme Court noted that

> [t]hese policies are to bar litigation over past events "after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused," H.R.Rep. No. 245, 80th Cong., 1st Sess., p. 40, and of course to stabilize existing bargaining relationships.

> . . . .

> a finding of violation which is inescapably grounded on events predating the limitations period is directly at odds with the purposes of the § 10(b) proviso.

*Local Lodge No. 1424,* 362 U.S. at 419, 422, 80 S.Ct. at 828, 829.

In the Court's view, the circumstances in this case are those described as "the second situation" in *Local Lodge No. 1424.* The Amendment providing for White Rose's total inclusive liability for the settlement to be $1,500,000.00 is "wholly benign" as were the disbursements to the plaintiffs pursuant to it, evidenced by the check stubs and payroll records. *See id.* Under the reasoning of *Local Lodge,* the Court should not permit the earlier alleged wrongful execution of the

Amendment to taint a facially valid contract clause, which the evidence indicates was administered and implemented in compliance with its terms. In this regard, see also *Flanigan v. IBT Truck Drivers Local 671,* 942 F.2d 824, 827 (2d Cir.1991) (the district court properly dismissed a claim against the union for breach of duty of fair representation in refusing to arbitrate plaintiffs' seniority rights claim, where plaintiffs had notice of the union's contrary interpretation one year before the grievance was filed); *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984) (union's failure to pursue a grievance is not a breach of DFR where it is only an unlawful practice by virtue of circumstances that existed more than six months prior to the time the action was commenced). The *Local Lodge No. 1424* decision also discussed the doctrine of the continuing violation in the § 10(b) context and concluded that

> "[t]he applicability of these principles cannot be avoided here by invoking the doctrine of continuing violation.

> . . . .

> Put another way, if the § 10(b) proviso is to be given effect, the enforcement, as distinguished from the execution, of such an agreement as this constitutes a *suable* unfair labor practice only for six months following the making of the agreement."

*Local Lodge No. 1424, supra,* 362 U.S. at 422, 423, 80 S.Ct. at 830.

In the Court's view, the facts alleged by the plaintiffs cannot support a DFR claim against Local 138 for its March 1995 refusal to take action regarding the alleged wrongful disbursement of the settlement funds. The facially valid Amendment and the disbursements made pursuant to its terms are only called into question by reference to the union's conduct in agreeing to the tax allocation without member ratification. Because this conduct is outside of the limitations period, such reference is barred by the clear direction of the cases discussed above.

Based on the foregoing, it is the Court's finding that with reference to the claims against Local 138, this is a case "whose facts predestine [it] to result in a directed verdict." *See United National Ins. Co., supra,* 988 F.2d at 355. Accordingly, summary judgment is granted in favor of Local 138 and the complaint is dismissed in its entirety as to that defendant. The Court notes, in this regard, that the plaintiffs have withdrawn the cause of action that seeks an accounting of the settlement funds, and in any event, the Court notes that the plaintiffs have been supplied with copies of the records relating to the payouts as part of White Rose's motion papers.

### C. As to the claims against the defendant employer White Rose

#### 1. The Section 301 claim

■ This Court previously held that the present action is governed by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which "covers suits for violation of contracts between an employer and a labor organization." *United Automobile, Aerospace and Agricultural Implement Workers of America v. R.E. Dietz Co.,* 996 F.2d 592, 595 (2d Cir.1993). Claims relating to "strike settlement agreements," such as the one at issue in this case, are properly brought under Section 301. *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.,* 369 U.S. 17, 27, 82 S.Ct. 541, 547–48, 7 L.Ed.2d 503 (1962).

In *Vaca v. Sipes, supra,* the Supreme Court discussed the circumstances under which an employee may directly sue his or her employer, where the parties are covered by a collective bargaining agreement that contains grievance and arbitration provisions that are intended to provide an exclusive remedy for breach of contract claims. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). According to *Vaca,* an employee may seek judicial review of a breach of contract claim where (1) the employer's conduct amounts to a repudiation of the contractual procedures or (2) the grievance procedure is controlled by the union and the employee has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. *Id.* at 185, 87 S.Ct. at 914. The Court

reasoned that it would be unjust if an employer committed a wrongful act in breach of a collective bargaining agreement, which could have been remedied through grievance process to the plaintiff's benefit had the union not breached its duty to fairly represent the employee. *Id.* at 185–86, 87 S.Ct. at 914–15. The Court stated,

> [f]or these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, *provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.*

*Id.* at 186, 87 S.Ct. at 914 (emphasis added). The Supreme Court has noted that the employee bears a substantial burden in such a suit, stating,

> [t]o prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.

*Hines v. Anchor Motor Freight Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976).

The Court has found that based on the facts in this case, the plaintiffs cannot prove that Local 138 breached its duty of fair representation with regard to the plaintiffs' challenge to the distribution of the settlement funds. Here, the plaintiffs' case against White Rosé cannot succeed, as a matter of law, in the absence of an essential element of their claim, namely, that the union breached its duty of fair representation. Accordingly, the motion by White Rose for summary judgment in its favor is granted and the claim that White Rose breached the agreements it entered into with the plaintiffs' authorized bargaining agent is dismissed.

The Court has given the plaintiffs in this action every opportunity to plead and prove their allegations against White Rose and the union. However, today's analysis of the plaintiffs' theories confirms the Court's initial impression that the Section 301 claim could not be maintained in the absence of a timely allegation that the union acted in breach of its duty of fair representation.

### 2. The claim that White Rose violated tax statutes

The plaintiffs set forth a claim against White Rose based on the Internal Revenue Code and FICA statutes, stating that White Rose acted in violation of those statutes by taking unauthorized deductions from the settlement funds. White Rose argues that individuals do not have a private right of action based on the tax statutes. The plaintiffs draw the Court's attention to statutes and cases recognizing a private right of action for improper deductions from wages. *See* N.Y.Lab.Law § 193; *Sanchez v. Overmyer*, 845 F.Supp. 1178 (N.D.Ohio 1993); *Hirt v. New York Automatic Canteen Corp*, 58 Misc.2d 310, 295 N.Y.S.2d 142 (N.Y.Civ.1968). New York Labor Law defines "wages" as "the earnings of an employee for labor or services rendered" and also includes payments for benefits or wage supplements such as "separation pay." N.Y.Lab.Law §§ 190(1), 198–c(2). Section 198 of the N.Y.Labor Law provides that employees may institute wage claims. The settlement in this action was to resolve all disputes arising from the closing of White Rose's Farmingdale plant, including a six month long strike by Local 138 members, by establishing a preferential hiring procedure and a monetary payout to the former employees.

However, in the Court's view, the present dispute is not properly characterized as a wage claim. The cause of action based on violations of tax statutes, like the plaintiffs' other claims, involves the Settlement Agreement and its amendment that expressly authorized distribution of the settlement fund in the form of payroll checks with all taxes to be deducted from the $1,500,000.00 that White Rose had originally agreed to pay.

Neither the Settlement Agreement nor the Amendment is stated in terms of an amount to be received by the former employees. Rather, the terms of the agreement refer to the amount that White Rose shall pay. Specifically, the Settlement Agreement provides

that "the settlement fund will be placed in escrow with Joint Council 16 and shall be distributed in accordance with the instructions given to it by the President of Local No. 138 or his official designee, provided, however that said instructions are consistent with this Paragraph 1." Settlement Agreement ¶ 1. The settlement agreement further provides that "Immediately at the conclusion of the one hundred twenty (120) day period set forth in Paragraph 1, the Company shall deposit one million dollars ($1,000,000) in an escrow account naming Joint Council 16 as Escrow Agent. One hundred twenty days thereafter, the Company shall deposit an additional five hundred thousand dollars ($500,000) in the said escrow account. These amounts have been escrowed and shall be disbursed in accordance with the terms of Paragraphs 1 and 2 herein." *Id.* at ¶ 7.

When Joint Council 16 determined that it could not function as the Escrow Agent for the settlement fund, the Amendment to the agreement was executed between Local 138 and White Rose. The Amendment provided that "this amendment shall not increase the cost of the Settlement Agreement to White Rose under any circumstances; the Company shall not be required to spend more than $1,000,000.00 in the first disbursement and $500,000.00 in the second disbursement, inclusive of all employment tax liability." The Amendment provides that there will be no escrow fund for the placement of funds, but that White Rose shall disburse the funds less all tax deductions. The Court notes that the original Settlement Agreement does not describe the settlement fund as wages and does not address the issue of tax liability.

In the Court's view the plaintiffs' "wrongful tax withholding" claim is essentially a dispute over the terms of the Settlement Agreement. As such, it is part of the plaintiffs' Section 301 claim and is properly dismissed under the analysis set forth above. However, even considered as a cause of action based on some separate right, the Court does not perceive a triable issue of fact based on the evidence before it. White Rose bargained to settle the plaintiffs' claims in the Settlement Agreement for a total of $1,500,000.00 by placing that sum in an escrow account. The Settlement Agreement was silent as to any tax liability and expressly stated White Rose's obligation under the agreement as $1,500,000.00. When the escrow agent was unable to serve in that capacity, White Rose negotiated an amendment to the Settlement Agreement with Local 138 to disburse the $1,500,000.00 via payroll checks, with White Rose's total liability to remain at the $1,500,000.00 that it had previously bargained for. It is not disputed that White Rose then disbursed a total of $1,500,000.00.

The Court does not perceive a triable issue of fact with regard to White Rose's conduct. Did White Rose not have the right to rely on the written settlement agreements it negotiated with Local 138? The plaintiffs argue that employers would violate tax statutes by withholding the employer's payroll tax liability from wages due to the employee. However, the plaintiffs cite no authority for the proposition that an employer violates tax laws by agreeing to settle a labor dispute for a sum certain that includes all tax liability. In the Court's view, White Rose complied with the plain terms of the Settlement Agreement and its subsequent Amendment when it disbursed $1,500,000.00 to settle the plaintiffs' claims. Accordingly, White Rose is entitled to summary judgment in its favor on the plaintiffs' claim that the sum certain settlement violated state and federal tax statutes.

The plaintiffs complain that failure by this Court to recognize a private remedy for reimbursement under the tax statutes "would leave White Rose's undisputed wrongdoing without any legal remedy or recourse." The Court disagrees. In this case the plaintiffs did not avail themselves of the various avenues of redress to which they had access, namely, (1) the grievance and arbitration procedures set forth in the parties' Settlement Agreement and collective bargaining agreement, and, in the event of arbitrary, discriminatory or bad faith conduct by the union in those processes, (2) a timely allegation that the union breached its duty of fair representation and a Section 301 claim against the employer.

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the motion for summary judgment by the defendant Local 138, pursuant to Fed.R.Civ.P. 56, dismissing the complaint against that defendant is granted; it is further

ORDERED, that the motion by the defendant White Rose for summary judgment, pursuant to Fed.R.Civ.P. 56, dismissing the complaint against it is granted; and it is further

ORDERED, that the complaint is dismissed in its entirety and the case is closed.

SO ORDERED.