128 F.3d 110
 156 L.R.R.M. (BNA) 2680, 134 Lab.Cas. P 10,076
 Stanley WHITE, individually and on behalf of all other
persons similarly situated; Ulysses Brown, individually and
on behalf of all other persons similarly situated; Donald
W. Swanson, individually and on behalf of all other persons
similarly situated, Plaintiffs-Appellants,
v.
WHITE ROSE FOOD, A DIVISION OF DIGIORGIO CORPORATION;
Furniture, Flour, Grocery, Teamsters, Chauffeurs &
Warehousemen Union, Local No. 138,
Defendants-Appellees.
 No. 1134, Docket 96-7954.
 United States Court of Appeals,
Second Circuit.
 Argued March 20, 1997.
Decided Oct. 22, 1997.
 
 Norman Mednick, New York City (Leonard N. Flamm, Maria D. Beckman, The Law Offices of Leonard N. Flamm, New York City, on the brief), for Plaintiffs-Appellants.
 David G. Uffelman, Roseland, NJ (Stanley L. Goodman, Grotta, Glassman & Hoffman, P.A., Roseland, NJ, on the brief), for Defendant-Appellee White Rose.
 Earl R. Pfeffer, New York City, (Dominique T. Bravo, Cohen, Weiss and Simon, New York City, of counsel), for Defendant-Appellee Furniture, Flour, Grocery, Teamsters, Chauffeurs & Warehousemen, Local Union No. 138.
 Before: FEINBERG and PARKER, Circuit Judges and SHADUR,* District Judge.
 PARKER, Circuit Judge.
 
 
 1
 White Rose Food, a Division of DiGiorgio Corporation ("White Rose") laid off the plaintiffs from employment at a New York grocery warehouse. The plaintiffs' union, the Furniture, Flour, Grocery, Teamsters, Chauffeurs & Warehousemen Union, Local 138 ("Local 138" or "the union"), negotiated a settlement with White Rose. However, the plaintiffs objected to the fact that White Rose was paying its wage taxes out of the settlement fund, and sued White Rose in the United States District Court for the Eastern District of New York. They eventually added the union as a defendant. The district court (Arthur D. Spatt, Judge ) granted summary judgment for the defendants. See White v. White Rose Food, 930 F.Supp. 814 (E.D.N.Y.1996). Plaintiffs appeal. We affirm the district court's grant of summary judgment in favor of Local 138, but vacate the court's grant of summary judgment in favor of White Rose and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 Plaintiff White and others were employed by defendant White Rose at its Farmingdale, New York grocery warehouse and were represented for purposes of collective bargaining by defendant Local 138. The parties operated under a collective bargaining agreement that was effective through January 31, 1991. In December 1990, Local 138 and White Rose began negotiations over a successor contract. They were not able to come to an agreement, and on February 1, 1991 the workers voted to strike. The strike lasted six months. On July 7, 1991, White Rose closed the Farmingdale warehouse and laid off all of the White Rose employees represented by Local 138.
 
 
 3
 In July 1992, Local 138, with the assistance of the International Brotherhood of Teamsters ("IBT") and Joint Council 16, a subordinate union of IBT, negotiated a settlement agreement (the "Original Settlement Agreement") with White Rose that settled all "disputes between them and any dispute regarding the cessation of operations at the Farmingdale facility." Under the Original Settlement Agreement, the former employees could be placed on a preferential hiring list for other White Rose jobs, and White Rose agreed to pay $1.5 million into a settlement fund for workers who opted for a pay-out instead. The Original Settlement Agreement was ratified by the membership of Local 138.
 
 
 4
 The Original Settlement Agreement provided that Joint Council 16 act as escrow agent for the distribution of the settlement funds, but Joint Council 16 determined in January 1993 that it would not be able to perform this function. Therefore, on January 23, 1993 Local 138 and White Rose entered into an amendment to their previous agreement (the "Amendment"), which purported to amend the Original Settlement Agreement "only with respect to the tax calculation and transfer of settlement monies." Under the new agreement, White Rose would issue checks and deliver them to Local 138 for distribution to the ex-employees. The Amendment was not submitted to the rank and file of the union membership for ratification.
 
 
 5
 White Rose sent out its first disbursements under the Amendment on or about February 11, 1993. White Rose deducted both the employees' and employer's shares of state and federal withholding taxes from the amounts it disbursed. The Original Settlement Agreement had not specified how taxes would be handled; the Amendment, on the other hand, specifically provided that the taxes would be deducted in this way. The deductions amounted to $193,109.91 of the $1,500,000.
 
 
 6
 Plaintiffs sued White Rose in New York state court on August 3, 1993, alleging inter alia that White Rose violated the Original Settlement Agreement when it (1) entered into the Amendment and (2) deducted payroll taxes from the settlement fund. White Rose removed to federal court in October 1993 on the basis of federal question jurisdiction. In their first complaint, the plaintiffs did not allege explicitly that Local 138 had at any point breached its duty of fair representation ("DFR") and did not join the union as a defendant. In June of 1994, White Rose filed a motion for summary judgment on all of the plaintiffs' claims. The court granted this motion, holding that plaintiffs were required to pursue their claims against White Rose through Local 138 in arbitration. The court also noted that the plaintiffs had not joined the union as a defendant, and so could not maintain their action.
 
 
 7
 The plaintiffs moved for reconsideration of the grant of summary judgment. The court amended its opinion to state that joinder of the union was not required, but held that summary judgment was still appropriate because the plaintiffs were required to allege in their suit against White Rose that Local 138 had breached its duty of fair representation, yet had not done so.
 
 
 8
 In September 1994, the plaintiffs formally requested the union to file a grievance against White Rose. The union undertook an investigation of the claim, then responded, in a letter dated March 9, 1995 that it did not believe that a breach of contract had occurred, and that it would not pursue the matter to arbitration.
 
 
 9
 The plaintiffs then brought another motion to reconsider in the district court, in May 1995. At this time, the plaintiffs produced the union's letter stating that it would not take the plaintiffs' claim to arbitration. The court then issued an order vacating its previous decisions and granted leave to plaintiffs to amend their complaint. On May 12, 1995, the plaintiffs brought their third amended complaint, which included an allegation that Local 138 breached its duty of fair representation by (1) entering into the Amendment to the Original Settlement Agreement and (2) refusing to take plaintiffs' claim to arbitration. This last complaint also alleged that White Rose had violated the Original Settlement Agreement and various federal tax statutes.
 
 
 10
 Defendants then moved for summary judgment again, which the district court granted. Plaintiffs appealed.
 
 
 11
 On appeal, the union filed a motion stating that the plaintiffs' appeal against it was patently frivolous, and seeking sanctions pursuant to 28 U.S.C. § 1912 and Federal Rule of Appellate Procedure 38. That motion was consolidated with this appeal.
 
 II. DISCUSSION
 A. Standard of Review and Applicable Law
 
 12
 We review a grant of summary judgment de novo. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.1997). Under federal labor law, an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer. See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163-64, 103 S.Ct. 2281, 2289-91, 76 L.Ed.2d 476 (1983); Vaca v. Sipes, 386 U.S. 171, 184-86, 87 S.Ct. 903, 913-15, 17 L.Ed.2d 842 (1967). Section 301 of the Labor Management Relations Act, 1947 (the "LMRA"), 29 U.S.C. § 185, governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied under the scheme of the National Labor Relations Act (the "NLRA"). See DelCostello, 462 U.S. at 164, 103 S.Ct. at 2290-91; see also Price v. International Union, United Auto. Aerospace & Agric. Implement Workers, 795 F.2d 1128, 1134 (2d Cir.1986) (union's duty of fair representation is implied from § 9(a) of the NLRA, 29 U.S.C. § 159(a), specifically). The limitations period on this "hybrid § 301/DFR" action is six months, see DelCostello, 462 U.S. at 169, 103 S.Ct. at 2293, which begins to run when the employee knew or should have known of the breach of the duty of fair representation, see Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir.1995); King v. New York Tel. Co., 785 F.2d 31, 33 (2d Cir.1986). The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both. See DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291.
 
 B. The Plaintiffs' Claims Against the Union
 
 13
 In their third amended complaint, the plaintiffs joined Local 138 as a defendant and alleged that the union had breached its duty of fair representation in two ways: (1) by entering into the Amendment without ratification by the union membership, and (2) by refusing to pursue their claim to arbitration.
 
 
 14
 1. The Union's Participation in the Amendment
 
 
 15
 The union was joined in this action more than two years after it participated in the Amendment; thus, the plaintiffs' claim against the union based on that act would be time-barred by the six-month limit of DelCostello. It is unclear whether the plaintiffs wish to contest this issue. In their initial brief, they appear to advance a theory that the "relation back" provisions of Rule 15(c) of the Federal Rules of Civil Procedure excuse the undue delay in bringing this action against Local 138, but they contradict this theory in their Reply Brief, where they state the following:
 
 
 16
 Contrary to Defendants' briefs, Plaintiffs do not assert that their amendments seeking to add Local No. 138 as a party "relate back" to the original Complaint pursuant to F.R.C.P. 15(c)(3).... Rather, Plaintiffs assert herein only that the substance of their amendments should relate back to the original claims against White Rose.
 
 
 17
 If the plaintiffs are arguing "only that the substance of their amendments should relate back to the original claims against White Rose," then the plaintiffs have done nothing to explain why a claim against Local 138 based on an event that occurred more than two years prior to the joining of Local 138 as a defendant should not be deemed untimely. They concede that the limitations period for actions of this sort is six months and that the union was joined as a defendant more than two years after the execution of the Amendment, and they waive whatever arguments they might have had that the joinder of the union relates back to the original complaint. Even in the absence of such a waiver, any such relation-back argument would be unpersuasive. Thus, the plaintiffs' action against the union--for participation in the Amendment, at least--is time-barred; summary judgment against them on this claim was proper.
 
 
 18
 2. The Union's Refusal to Take Plaintiffs' Claim to Arbitration
 
 
 19
 The plaintiffs argue that because the third amended complaint was filed within six months of the union's refusal to take the plaintiff's claim to arbitration, their claim based on this refusal is not time-barred.
 
 
 20
 The plaintiffs' action accrued " 'no later than the time when plaintiffs knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred.' " Cohen, 68 F.3d at 67 (quoting Santos v. District Council of United Bhd. of Carpenters, 619 F.2d 963, 969 (2d Cir.1980)) (alteration in Cohen ); accord Legutko v. Local 816, Int'l Bhd. of Teamsters, 853 F.2d 1046, 1055 (2d Cir.1988); King, 785 F.2d at 34. In Cohen, the plaintiff's employer, a hospital, notified the plaintiff that it was considering the plaintiff to have resigned because the plaintiff had not shown up for work for two months. Under the applicable collective bargaining agreement, the plaintiff could grieve the hospital's action either by presenting his former superior with a written grievance signed by his union representative, or by notifying his union, which then had ten days to file a grievance with the employer. See Cohen, 68 F.3d at 66. Both before and after the hospital's action, the plaintiff sent letters to a third party alleging that the hospital had discriminated against him based on creed and disability, and this third party forwarded the letters to the plaintiff's union. However, the plaintiff never initiated either of the formal grievance procedures provided for in the collective bargaining agreement, and the union never responded to these letters. Over nine months later, the plaintiff sued the hospital and the union on a hybrid § 301/DFR theory. Id. at 66. We held that the suit was time-barred because a letter to the third party from the plaintiff made clear that the plaintiff knew that the union had failed to bring his grievance within the ten-day period allotted by the collective bargaining agreement. "This knowledge was sufficient to start the statute of limitations running." Id. at 68. Moreover, "[b]ecause Cohen did not invoke the grievance process or even contact the Union directly about his termination, the Union's lack of response did not extend the accrual date of his cause of action." Id. at 68. Finally, we noted that "[d]iligence proves to be a missing ingredient in this case, as there is no indication that Cohen made any effort to determine the Union's stance on his termination." Id. at 69.
 
 
 21
 There is a similar lack of diligence in this case. The plaintiffs here complain about an action taken by their employer in February 1993, yet their first formal request on their union to pursue their claim to arbitration was made in September 1994. This is a delay of nineteen months--thirteen months longer than the limitations period prescribed by DelCostello. The plaintiffs have offered no explanation as to why they could not have demanded that the union arbitrate their grievance immediately after they received their settlement paystubs in February 1993. If they had done so, they would have known whether the union had breached its duty of fair representation within a very short time thereafter. Their own lack of diligence should not toll the limitations period in their favor. Allowing the plaintiffs' claim would be like allowing the plaintiff in Cohen, his claim dead after six months, to revive it with a formal request to his union to arbitrate.
 
 
 22
 The plaintiffs filed their complaint within six months of the time when they knew of an act alleged to constitute a breach of the union's duty of fair representation, but they did not file it within six months of when they should have known whether the union would breach its duty of fair representation or not. Their failure-to-arbitrate claim is, therefore, barred by the six-month limitations period of DelCostello. The district court's grant of summary judgment in favor of the union was also proper.
 
 3. Summary
 
 23
 Both claims by plaintiffs against the union were untimely under DelCostello. We therefore affirm the summary judgment in favor of the union.
 
 C. Plaintiffs' Claims against White Rose
 1. The § 301 Claim
 
 24
 In their third amended complaint, the plaintiffs alleged that White Rose breached the collective bargaining agreement by entering into the Amendment and by paying its share of withholding taxes out of the settlement funds. The district court granted summary judgment in favor of White Rose, stating the following:
 
 
 25
 The Court has found that based on the facts in this case, the plaintiffs cannot prove that Local 138 breached its duty of fair representation with regard to the plaintiffs' challenge to the distribution of the settlement funds. Here, the plaintiffs' case against White Rose cannot succeed, as a matter of law, in the absence of an essential element of their claim, namely, that the union breached its duty of fair representation. Accordingly, the motion by White Rose for summary judgment in its favor is granted and the claim that White Rose breached the agreements it entered into with the plaintiffs' authorized bargaining agent is dismissed.
 
 
 26
 930 F.Supp. at 823.
 
 
 27
 So far as we can determine on this record, the conclusion that the plaintiffs cannot prove a breach of duty by the union is based wholly on the fact that the plaintiffs' claim against the union was outside the limitations period. This was error. The district court's reasoning rests on a false premise. The fact that the plaintiffs are time-barred from bringing a claim against the union does not mean that "the plaintiffs cannot prove that Local 138 breached its duty of fair representation" in an action against White Rose. As noted above, see section II.A., plaintiffs suing under a § 301/DFR theory need not sue their union at all: it could hardly be that the running of the limitations period as to the union extinguishes the right of action against the employer. The fact that DelCostello 's limitations period has expired as against Local 138 has no bearing on the validity of the plaintiffs' suit against White Rose.
 
 
 28
 We therefore vacate the district court's summary judgment in favor of White Rose and remand the plaintiffs' claims for further proceedings. In so doing, however, we express no view as to whether the union's failure to submit the amendment for ratification or to challenge the disbursements when made (absent a demand from the membership at the time) amounts to a breach of the duty of fair representation.
 
 
 29
 As there appears to be some confusion among the parties as to what role Federal Rule of Civil Procedure 15(c) should play in this case, we also make a few observations concerning that rule and the facts of this case. First, the district court granted the plaintiffs leave to file a third amended complaint, and the third amended complaint alleges both a breach of the collective bargaining agreement on the part of White Rose, and a breach of the duty of fair representation on the part of the union. Second, Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original. See, e.g., Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 125 (2d Cir.1994); Villante v. Department of Corrections of the City of New York, 786 F.2d 516, 520 (2d Cir.1986). Therefore, if White Rose challenges the plaintiffs' third amended complaint as untimely on remand--assuming that White Rose has not waived this argument, as to which we express no view--the district court should consider whether the allegations added in the third complaint arise out of the same transaction as that set forth in the original complaint. If the court determines that they do, then the allegations of the third amended complaint relate back to the first.
 
 
 30
 We also note that the plaintiffs have argued that their original complaint (which named only White Rose) adequately alleged a breach of DFR on the part of the union, and so no relation-back principles need be applied to find the complaint adequate. We express no opinion on this argument at this time, leaving it to the district court.
 
 
 31
 2. Plaintiffs' Tax Claims against White Rose
 
 
 32
 In the court below, the plaintiffs argued that White Rose violated the Federal Unemployment Tax Act ("FUTA"), the Federal Insurance Contributions Act ("FICA"), and state unemployment insurance ("SUI") statutes when it used the settlement funds to pay its tax liability, and that they have standing to pursue a private right of action against White Rose for these violations. See 930 F.Supp. at 823. White Rose, in its motion for summary judgment, opposed these claims on the ground that the plaintiffs did not have standing to bring a private right of action for a violation of FUTA, FICA or SUI. Def. White Rose's Mem. of Law in Support of Its Motion for Summary Judgment at 18-19. The plaintiffs countered this argument by pointing to a federal district case from another circuit in which a private cause of action was allowed under FICA. Plaintiffs' Combined Mem. of Law in Opposition to Defendants' Respective Motions for Summary Judgment at 20-23 (citing Sanchez v. Overmyer, 845 F.Supp. 1178, 1181-82 (N.D.Ohio 1993)).
 
 
 33
 The district court granted summary judgment in favor of White Rose on the tax claims. It did so on two grounds. First, it held that the plaintiffs' claim was not properly characterized as a "wage" claim, because it was "essentially a dispute over the terms of the [Original] Settlement Agreement." See id. at 824. It then stated that the plaintiffs' tax claims were essentially part of their § 301 claim, and held that they were dismissed along with it. See id. Finally, the court held, alternatively, that "even considered as a cause of action based on some separate right," the plaintiffs' claim failed because there was no issue of triable fact, as the Original Settlement Agreement clearly stated that White Rose was settling its claims with the union for a total of $1,500,000, and "the plaintiffs cite no authority for the proposition that an employer violates tax laws by agreeing to settle a labor dispute for a sum certain that includes all tax liability." Id.
 
 
 34
 On appeal, the plaintiffs attack this holding on two grounds. First, they argue that the court's first basis for dismissing the tax claims--that the tax claims were essentially the same as the § 301 claim and therefore fell with it--is wrong for the same reasons that its § 301 holding was wrong. Second, they argue that the court's alternative basis for dismissing the tax claims--that an employer is allowed to settle a labor dispute for a sum certain that includes all tax liability--assumes an answer to a question that was not raised by the defendants' summary judgment motions. They claim that they never had a chance to present their arguments on the question of whether the settlement funds were "wages" or not because White Rose's summary judgment motion only disputed their standing and not the issue of wages vel non.
 
 
 35
 We agree with both of plaintiffs' arguments. First, as we have seen above, the court erred when it dismissed plaintiffs' § 301 claim against White Rose; therefore, a dismissal of the plaintiffs' tax claims on this basis was inappropriate. Second, a required step in the court's alternative reasoning was a holding on the issue of whether the monies put into the escrow account were "wages," yet this issue was neither contested nor patently obvious. Under both FICA and FUTA, "wages" are "all remuneration for employment." See 26 U.S.C. § 3121(a); id. § 3306(b). The language of the Original Settlement Agreement does not address the question of whether White Rose's payments were wages: the plaintiffs should have an opportunity to make their arguments on this issue before the court rules.
 
 
 36
 We therefore remand the plaintiff's tax claims against White Rose as well. We note that at this point the issue of the plaintiffs' standing remains open, as does the issue of whether the monies in the escrow account were "wages." While these are matters of law, we will not opine on them, as they were not treated by the district court and were not fully briefed in this court.
 
 
 37
 D. The Union's Motion for Sanctions for Frivolous Appeal
 
 
 38
 On appeal, the union has moved for sanctions under 28 U.S.C. § 1912 and Federal Rule of Appellate Procedure 38, arguing that the plaintiffs' appeal against them is patently frivolous. This motion was consolidated with this appeal.
 
 
 39
 It is a cause for concern that the plaintiffs have, in their Reply Brief before this Court, as much as consented to the dismissal of the union from this suit. If they had not filed a Notice of Appeal against the union, or had at least made their position clear in their initial Brief, the union would have been saved some expense.
 
 
 40
 However, the plaintiffs also had reason to be cautious. Conceivably, this Court could have disposed of this case in a manner that would have required the union's presence on remand. It was not frivolous for the plaintiffs to include the union in their appeal in light of this uncertainty. The union's motion for sanctions is therefore denied.
 
 III. CONCLUSION
 
 41
 Summary judgment in favor of the union is affirmed. Summary judgment in favor of White Rose is vacated and remanded for further proceedings. The union's motion for sanctions is denied.
 
 
 
 *
 The Honorable Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation