909 F.2d 48
 134 L.R.R.M. (BNA) 3033, 115 Lab.Cas. P 10,192
 Ted KOZERA, Mike Hanley, Chris Kulers, Michael Cinelli,
Frank Honan, and James Stemmerman, each individually and as
a member of Local Union 501 of International Brotherhood of
Electrical Workers, and each on behalf of all persons
members of Local Union 501 of International Brotherhood of
Electrical Workers, similarly situated,
Plaintiffs-Appellees, Cross-Appellants,
v.
WESTCHESTER-FAIRFIELD CHAPTER OF NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION, INC., Local Union No. 501 of
International Brotherhood of Electrical Workers, AFL-CIO,
and Donald Werle as President and Douglas Reid as Treasurer
of Local Union 501, IBEW, Defendants,
Westchester-Fairfield Chapter of National Electrical
Contractors Association, Inc. Defendant-Appellant,
Local Union No. 501 of International Brotherhood of
Electrical Workers, AFL-CIO, Defendant-Appellee,
Cross-Appellee.
 Nos. 983, 1152, Dockets 89-9072, 89-9160.
 United States Court of Appeals,
Second Circuit.
 Argued March 28, 1990.
Decided July 13, 1990.
 
 Joseph J. Steflik, Twining, Nemia, Hill & Steflik, Binghamton, N.Y., for defendant-appellant Westchester-Fairfield Chapter of Nat. Elec. Contractors Ass'n.
 Gary L. Lieber, Porter, Wright, Morris & Arthur, Washington, D.C. (Lawrence J. Cohen, Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., of counsel), for amici curiae Nat. Elec. Contractors Ass'n, Inc. and Intern. Broth. of Elec. Workers, AFL-CIO.
 Burton H. Hall, Hall & Sloan, New York City, for plaintiffs-appellees-cross-appellants.
 Ralph P. Katz, White Plains, N.Y., for defendant-appellee Local Union No. 501, IBEW.
 Before OAKES, Chief Judge, and WINTER, Circuit Judge, and MUKASEY, District Judge.[1]
 OAKES, Chief Judge:
 
 
 1
 The Westchester-Fairfield Chapter ("the Chapter") of the National Electrical Contractors Association, Inc. ("NECA"), appeals a September 28, 1989, judgment of the United States District Court for the Southern District of New York, John E. Sprizzo, Judge, declaring void a purported addendum to a collective bargaining agreement and finding the Chapter in breach of the underlying collective bargaining agreement through its implementation of the terms of the addendum. Plaintiffs, six members of Local Union 501 ("the Local Union") of the International Brotherhood of Electrical Workers ("IBEW"), acting individually and on behalf of all other similarly situated members of the Local Union, cross-appeal the district court's dismissal of their claims against the Local Union for breach of the union's duty of fair representation arising out of the Local Union officers' signing of the addendum without prior disclosure to the membership, and the district court's denial of their motion for class certification. The district court's judgment followed a bench trial and was entered pursuant to an opinion and order dated May 30, 1989, and reported at 714 F.Supp. 644 (S.D.N.Y.1989).
 
 
 2
 We disagree with the district court's holding that the underlying collective bargaining agreement was valid but that the addendum was not binding upon the parties. Concluding instead that both the underlying agreement and the addendum were final and binding, we reverse the district court's imposition of liability upon the Chapter for its implementation of the terms of the addendum to the collective bargaining agreement. We moreover vacate the district court's dismissal of plaintiffs' claims against the Local Union, and remand for further proceedings on this issue.
 
 
 3
 This case requires us to consider the proper role of labor arbitrators and courts in construing the validity of collective bargaining agreements that leave hotly-contested issues open for future negotiation by the parties. Appellant, the Westchester-Fairfield Chapter, is a local affiliate of NECA, a national trade association comprised of electrical contractors that is served through 127 local chapters chartered by and affiliated with the national association. The primary function of these local chapters, including the Westchester-Fairfield Chapter, is to act as multi-employer associations for the negotiation and administration of collective bargaining agreements on behalf of local electrical contractors who authorize the chapters to act as their collective bargaining agents. The Westchester-Fairfield Chapter represents electrical contractors who perform work in Westchester County, New York, and Fairfield County, Connecticut, and has a long collective bargaining history with appellee Local Union 501, which represents workers who perform inside electrical work in Westchester and Fairfield counties.
 
 
 4
 The collective bargaining relationship between the local NECA chapters and the IBEW local unions has been a successful one throughout the industry; integral to this success has been the Council on Industrial Relations for the Electrical Contracting Industry ("CIR"), a national arbitration body composed of an equal number of IBEW and NECA representatives (and their local affiliates) that adjudicates local grievances and contract negotiation disputes throughout the electrical contracting industry. The CIR generally derives its authority to hear disputes pursuant to the provisions of many local collective bargaining agreements which designate CIR as the dispute-resolution body.
 
 
 5
 On June 13, 1986, the eve of an impending strike, Local Union 501 and the Westchester-Fairfield Chapter reached an "Inside Wiremen's Agreement" that modified and extended for three years (until May 1989) the terms of a previous collective bargaining agreement that had governed the parties' relationship from 1983-86. The Inside Wiremen's Agreement was labelled "Final Agreement" and was in the form of a two-page handwritten memorandum listing the modifications of the previous agreement. To facilitate quick agreement and thereby avert the impending strike by Westchester electrical workers, however, the Chapter and the Local Union left open for future negotiation a proposal, among others, that would aim to make union electricians and Chapter employers more competitive in the market for residential electrical work by allowing Chapter employers to modify the wage rate paid to union electricians performing such work. However, the Local Union and the Chapter did "agree to agree" on such a proposal at a future time. In fact, the handwritten memorandum provided that the 1986-89 Inside Wiremen's Agreement would include a memorandum of understanding concerning residential work. Members of the Local Union ratified the 1986-89 Inside Wiremen's Agreement on June 19, 1986.
 
 
 6
 Despite protracted negotiations continuing from June 1986 to April 1987, the Local Union and the Chapter were unable to come to agreement as to the various residential work proposals. The Local Union, having recently had its jurisdiction over workers performing "outside" line work[2] taken away by the international office of the IBEW and transferred to another local, began fearing that its failure to have secured a signed agreement with the Chapter as to inside work could result in a further removal of its representative status or jurisdiction. Accordingly, the Local Union began pressing the Chapter in April 1987 to sign formally the version of the Inside Wiremen's Agreement that had been negotiated in June 1986. The Chapter refused to do so, claiming that an agreement as to the residential work was a condition precedent to the validity of the Inside Wiremen's Agreement. The Local Union argued that the June 1986 Inside Wiremen's Agreement was binding notwithstanding the lack of agreement as to residential work.
 
 
 7
 After reaching an impasse, the Local Union and the Chapter jointly submitted the issue of the validity of the Inside Wiremen's Agreement, absent a residential work agreement, to arbitration before the CIR. On May 18, 1987, the CIR, apparently finding that the Inside Wiremen's Agreement was inseparable from any agreement as to the residential work issue, handed down its decision instructing the parties to sign the Inside Wiremen's Agreement as well as a Residential Agreement that had been previously proposed by NECA's and IBEW's national organizations but rejected by the Local Union. Under this Residential Agreement and its accompanying Memorandum of Understanding, Chapter employers were free to pay employees nearly half their normal wage rate in jobs involving electrical work in "residential occupancy dwellings" and in all other jobs involving "all electrical systems up to a maximum total electrical value of $75,000"; Chapter employers also could hire directly any employees for such work, without first receiving referrals from the Local Union.
 
 
 8
 Shortly after the CIR rendered its decision, the president and business manager of the Local Union signed the Residential Agreement on June 11 and June 18, 1987, respectively, but without first notifying or seeking the approval of the executive board or of union members. The president and business manager continued to conceal the fact of their signatures until the June 22, 1987, special meeting of the executive board, at which time it was revealed that the president had signed the Residential Agreement, but not that the business manager also had signed the Agreement. The executive board informally voted at that meeting that the Local Union should take legal action to vacate the CIR award, and urged the business manager not to sign the Residential Agreement. However, the Local Union's officers chose not to challenge the CIR award. They, together with executive board members, testified at trial that the officers had expressed grave doubts at the June 22, 1987, meeting as to the consequences of challenging the award. Having already had some of their jurisdiction removed by the international office of the IBEW, the officers apparently feared that such a challenge would be tantamount to challenging the International, both since the International selected the union members on the CIR, and since the Residential Agreement had been negotiated by the International and the national office of NECA.
 
 
 9
 The president and business manager of the Local Union also withheld the fact of the CIR award and their signature of the Residential Agreement from the membership of the Local Union. Although the award and Agreement were briefly mentioned at the June 25, 1987, membership meeting, discussion of the contents was not fully held until the special membership meeting on July 7, 1987, well after the Residential Agreement had been signed. In fact, despite the petition by Local Union members urging the officers to challenge the CIR award and Residential Agreement, the president and business manager of the Local Union submitted the Residential Agreement, pursuant to Local Union practice, for approval by the international office, which they in turn received. Although the Residential Agreement was never ratified by the Local Union's members, Chapter employers treated it as valid and began implementing its terms.
 
 
 10
 Six members of the Local Union initiated this action in July 1987 to nullify the Residential Agreement, to obtain damages from the Local Union for its alleged breach of its duty of fair representation arising out of the Local Union's entering into the Residential Agreement, and to obtain damages from the Westchester-Fairfield Chapter for violating the underlying collective bargaining agreement (the Inside Wiremen's Agreement) by putting into effect the purportedly invalid and unratified Residential Agreement. On February 17, 1988, the district court vacated the CIR award on grounds that the arbitrator had exceeded its delegated authority in instructing the parties to sign the Residential Agreement. Holding that the only issue properly before the arbitrator had been whether the Chapter was justified in refusing to sign the Inside Wiremen's Agreement absent agreement on residential work, the district court remanded the issue to the arbitrator and scheduled the plaintiffs' claims for trial.
 
 
 11
 The parties resubmitted their dispute to the CIR on March 31, 1988. The CIR issued a revised decision on April 8, 1988, in which it ruled that "[a]bsent a resolution by the parties for residential and small work, the Westchester-Fairfield Chapter, NECA is not required to sign the Inside Wiremen's Agreement in question." Nevertheless, following trial, the district court on May 30, 1989, concluded that the two agreements--the underlying Inside Wiremen's Agreement and the Residential Agreement--were separable. Holding that the Residential Agreement was not valid since the president and business manager of the Local Union had no actual or apparent authority to sign the document, the district court still found the underlying Inside Wiremen's Agreement to be binding. Accordingly, the district court found the Chapter to be liable for violating the Inside Wiremen's Agreement by implementing the unauthorized provisions of the Residential Agreement. Although the court also found the union agents' acts to be unauthorized, it dismissed plaintiffs' claim against the union on grounds that the unauthorized acts of its agents could not be attributed to the union.
 
 
 12
 The Chapter appeals from the district court's imposition of liability upon it and the vacation of the Residential Agreement, and plaintiffs cross-appeal from the court's denial of their claim against the Local Union.
 
 DISCUSSION
 
 13
 1. Validity of Inside Wiremen's Agreement and Residential Agreement
 
 
 14
 As a threshold matter, we must address whether a federal court has jurisdiction to determine the validity of a collective bargaining agreement. Appellant contends that although a federal court has jurisdiction, pursuant to 29 U.S.C. Sec. 185(a) (1988), to decide actions alleging violations of an agreement between a union and an employer, it lacks power to rescind or invalidate agreements between an employer and a union. It is axiomatic, however, that to determine whether a breach of agreement has occurred, a court must necessarily determine whether a valid agreement exists in the first place. Ancillary to determining the merits of an action for breach of a collective bargaining agreement, therefore, is the power to declare a purported agreement either invalid or binding. Not surprisingly, therefore, the Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits all allow a district court to determine the validity of a collective bargaining agreement as part of the power to determine whether there has been a breach. See IBEW, Local 481 v. Sign-Craft, Inc., 864 F.2d 499, 501-02 (7th Cir.1988); Mack Trucks, Inc. v. International Union, UAAAIW, 856 F.2d 579, 586-90 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1316, 103 L.Ed.2d 585 (1989); Rozay's Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321, 1326 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989); McNally Pittsburg, Inc. v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, 812 F.2d 615, 617-19 (10th Cir.1987); Board of Trustees v. Universal Enters., 751 F.2d 1177, 1184 (11th Cir.1985); United Steelworkers of America v. Rome Indus., Inc., 437 F.2d 881, 882-83 (5th Cir.1970). We do likewise.
 
 
 15
 Turning to the validity of the Inside Wiremen's Agreement and/or the Residential Agreement, we begin with several cardinal rules regarding judicial review of an arbitrator's decision. It is well established that particularly in the context of labor relations, private resolution of disputes is preferable to litigation. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.... [A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38, 108 S.Ct. 364, 370-71, 98 L.Ed.2d 286 (1987).
 
 
 16
 Although a district court may vacate the findings of an arbitrator if it concludes that the arbitrator decided an issue beyond the scope of his or her delegated authority, see United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597-99, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 281-82 (1st Cir.1983), the presumed authority of an arbitrator to resolve issues is broad, and courts expansively interpret the scope of an arbitrator's delegated authority by resolving doubts in favor of arbitrability. See AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); Transit Mix Concrete Corp. v. Local Union No. 282, 809 F.2d 963, 968 (2d Cir.1987).
 
 
 17
 We apply these principles to conclude that although the district court properly found that the CIR exceeded its authority by requiring the parties to sign the Residential Agreement as part of its May 18, 1987, award, the district court, in upholding the validity of the Inside Wiremen's Agreement but not of the Residential Agreement, too summarily dismissed the CIR's April 8, 1988, decision finding that the two agreements must rise or fall together.
 
 
 18
 a. District Court's Vacation of First CIR Decision
 
 
 19
 We conclude that the CIR went beyond its delegated authority in its first award by requiring the parties to sign the Residential Agreement, because the parties delegated to the CIR only the power to decide the validity of the Inside Wiremen's Agreement, not of the Residential Agreement. In their joint submission form, the parties concededly framed the issue before the CIR in very unspecific terms: "Employer refuse [sic ] to formally sign and submit for approval new collective bargaining agreement negotiated on June 13, 1986. This matter is being jointly submitted under Article 1, Section 1.04(d) for adjudication [contract provision for grievance arbitration rather than interest arbitration]." However, in its brief to the CIR, the Local Union framed the issue as follows: "[W]e are asking Council to mandate that the Inside Wiremen's Agreement be signed AS NEGOTIATED and submitted for approval immediately." The Chapter's brief framed the issue jointly submitted to the CIR more broadly:
 
 
 20
 The Employers request of the C.I.R. is that a decision be rendered that would require immediate implementation of the [Residential] Agreement and Memorandum [of Understanding accompanying the Agreement] prepared and presented by the Third District Office of the I.B.E.W. and the Eastern Regional Office of N.E.C.A.
 
 
 21
 Were we to conclude that the CIR could properly consider the issue as framed by the Chapter's brief, we would have no trouble finding that the CIR acted within its delegated authority. However, given that the joint submission form only mentioned the validity of the Chapter's refusal to sign the "agreement negotiated on June 13, 1986"--i.e., the Inside Wiremen's Agreement--we think the CIR improperly allowed the Chapter to change the scope of the submission unilaterally in also considering whether the specific Residential Agreement negotiated by the national office of NECA and the international office of the IBEW could be imposed on the Local Union. The district court accordingly properly vacated the first CIR award.
 
 
 22
 b. District Court's Vacation of Residential Agreement and Enforcement of Inside Wiremen's Agreement
 
 
 23
 Nevertheless, the district court's vacation of the Residential Agreement, combined with its enforcement of the Inside Wiremen's Agreement, demonstrates an erroneous disregard of the CIR's second decision dated April 8, 1988. Upon remand from the district court order vacating the first award and directing the panel to consider solely whether the Chapter's refusal to sign the Inside Wiremen's Agreement was proper, the CIR ruled that the Chapter was justified since the Inside Wiremen's Agreement and Residential Agreement must rise or fall together. In concluding that the agreement on residential work was fundamental to the existence of a collective bargaining agreement, the CIR presumably drew on its experience in analyzing the significance of the industry-wide dispute over contractors' lack of competitiveness in the residential market. The district court's disregard of the CIR's conclusion too sweepingly usurped the authority of the arbitrator to resolve issues clearly before it. As noted above, a district court's disagreement with an arbitrator's factual findings is an insufficient basis for vacating the arbitrator's award. Accordingly, we find unsupported the district court's holding that the Inside Wiremen's Agreement may be enforced even absent the Residential Agreement, and uphold the CIR's second decision concluding that the two agreements must rise or fall together.
 
 
 24
 Having found that the two agreements must rise or fall together, the next question becomes whether both agreements should be enforced or declared invalid. Although we decline to uphold both agreements on grounds of the first CIR award, which we previously stated exceeded the CIR's authority, we do find that both may be enforced on grounds that they were signed by the Local Union and the Chapter. Because the officers of the Local Union could have declined to sign the agreements and instead have challenged the first CIR award, we do not think it unwise to bind the officers to their signatures.
 
 
 25
 Even though the Residential Agreement had not been ratified by the membership, we conclude that, notwithstanding the issue of the duty of fair representation and disclosure owed by the Local Union's president and manager to the membership, the Chapter could reasonably believe that officers of the Local Union had authority pursuant to the arbitration award to bind the union membership. See NLRB v. Local 815, Int'l Bhd. of Teamsters, 290 F.2d 99, 103 (2d Cir.1961) (Friendly, J.) (a union may be responsible for the actions of its agents if third parties dealing with the agents reasonably believe the acts to be authorized); see also Metco Prods., Inc. v. NLRB, 884 F.2d 156, 159 (4th Cir.1989) (same); Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1112-14 (6th Cir.1986) (same), cert. denied, 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987). That the CIR award itself may have been legally challengeable by the Local Union does not affect the authority of Chapter members to act pursuant to it, once the union officers carried out its terms rather than seeking to have the award vacated. Because the Chapter had no reason to doubt the authority of union officers to comply with an arbitration order, we think that both the Inside Wiremen's Agreement and Residential Agreement are binding upon the Local Union.
 
 2. Plaintiffs' Claim Against Chapter
 
 26
 Because the Residential Agreement is binding, we conclude that the Chapter is not liable to members of the Local Union for implementing its terms, in breach of the terms of the Inside Wiremen's Agreement. We furthermore note that once we upheld, as we have, the second CIR decision holding that the Inside Wiremen's Agreement and Residential Agreement must rise or fall together, we could not have found the Chapter in breach. Even if we had found both agreements to be invalid, the Chapter could not be liable since there would be no valid agreement for the Chapter to have breached. And if both agreements were held valid (as we have done), then the Chapter could not be liable for implementing the terms of both.
 
 3. Plaintiffs' Claim Against Local Union
 
 27
 Although the Local Union officers' signatures may have bound the union with regard to the Chapter, their actions nevertheless may also have constituted a breach of the officers' obligation, as part of their duty of fair representation, to go to the membership with the issue whether to challenge the CIR award in court or to abide by the arbitration order. The district court denied plaintiffs' claims against the Local Union on grounds that any unauthorized actions or breaches of the duty of fair representation on the part of the officers could not be attributable to the union. Yet we conclude that if the acts of the president and business manager are found to violate the union's duty of fair representation, such acts should be attributable if it is determined that the Local Union did not have in place adequate procedures to guard against the commission of such unauthorized acts. Cf. American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 572, 102 S.Ct. 1935, 1945-46, 72 L.Ed.2d 330 (1982) (finding nonprofit organization liable for acts of agent since "without any meaningful safeguards, [the organization] entrusted the interpretation of one of its codes to [agent]" (footnote omitted)). Because we think this issue requires further factual amplification, we vacate the district court's finding that the Local Union may not be held liable for any potential breach of the duty of fair representation by its agents and remand for a determination of whether the agents' actions constituted a breach, and whether such breach might have been avoided through institution of proper safeguards. The district court on remand should also consider plaintiffs' motion to be certified as a class.
 
 
 28
 Judgment reversed in part and vacated in part. Cause remanded as to plaintiffs' claim against the Local Union.
 
 
 
 [1]
 Of the Southern District of New York, sitting by designation
 
 
 [2]
 "Outside work" generally refers to electrical work performed on outdoor utility lines, streets, and poles, while "inside work" refers to electrical work performed within dwellings. Prior to removal of its outside line jurisdiction, the Local Union had represented both inside wiremen and outside wiremen for over 80 years