**Stanley WHITE, Ulysses Brown, and Donald W. Swanson, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**WHITE ROSE FOOD, A DIVISION OF DIGIORGIO CORPORATION, Defendant.**

No. CV 93-4837(ADS).

United States District Court, E.D. New York.

July 12, 1999.

Grotta, Glassman & Hoffman, P.A., Roseland, NJ (Jed L. Marcus, Patricia L. Hardaway, of counsel), for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this hybrid action brought pursuant to section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, arising from the disbursement of settlement funds following a plant closing, the Court previously dismissed the Third Amended Complaint against the defendants White Rose Food, a Division of DiGiorgio Corporation ("White Rose"), and the Furniture, Flour, Grocery, Teamsters, Chauffeurs & Warehousemen Union, Local No. 138 (the "Local 138") by a Memorandum Decision and Order dated July 8, 1996, and as corrected on August 13, 1996. *See* 930 F.Supp. 814 (E.D.N.Y.1996).

On appeal, the Second Circuit affirmed the dismissal as against the Local 138 but reversed as to White Rose, the plaintiffs' previous employer. *See* 128 F.3d 110 (2d Cir.1997). Thus, the only remaining causes of action in the third amended complaint are those against defendant White Rose, namely the section 301 claim and the tax claims, both contained within the first cause action. On remand, White Rose again moves for summary judgment. By a Memorandum Decision and Order dated September 11, 1998, the Court deemed White Rose's motion withdrawn, without prejudice, as the parties failed to adequately address the key issues raised in the Second Circuit's decision. Both parties subsequently filed revised legal memoranda. Presently before the Court is the motion by White Rose, once again seeking summary judgment, dismissing the Third Amended Complaint.

Law Offices of Leonardo M. Flamm, New York City (Leonard N. Flamm, Norman Mednick, of counsel), for plaintiffs.

## I. BACKGROUND

While full familiarity with the factual background and the lengthy procedural history of this case is assumed, the Court

will briefly summarize the relevant facts and the procedural history.

This action was commenced in August 1993 by the plaintiffs, former employees of White Rose and members of Local 138, after a settlement agreement between White Rose and Local 138 that followed a labor strike and closing of White Rose's Farmingdale, New York warehouse. Under the settlement agreement, eligible individuals could elect either (1) payment from a strike settlement fund; (2) pension contributions; (3) placement of preferential hiring lists at other White Rose facilities, for a period of time; or (4) immediate placement in a job at another facility.

The settlement agreement, executed in September 1993, provided that White Rose would place $1,500,000 in a special escrow account to be distributed to eligible former employees of the Farmingdale facility. The Settlement Agreement contained a binding arbitration clause and expressly stated that it must be ratified by the eligible rank and file members of Local 138 who were former employees of White Rose. White Rose executed the Settlement Agreement on July 23, 1992 and the Union membership ratified it on September 21, 1992. Approximately 344 employees accepted the settlements monies while the other members selected the other options.

In January 1993, the entity that was to act as escrow agent and distributor of the settlement funds determined that it was unable to function in that capacity. As a result, on January 23, 1993, Local 138 and White Rose entered into an "Amendment to Settlement Agreement," (the "Amendment"), that provided for payment directly from White Rose to the eligible employees, upon presentation of a list of those employees and their completed W–4 forms. The Amendment also provided for White Rose to issue payroll checks to those former employees who elected to receive settlement money. Pursuant to the Amendment, deductions were made from the checks issued for all applicable payroll taxes. The Amendment further provided that from the settlement sum of $1,500,000, White Rose shall issue "payroll checks, less all required tax deductions." The Amendment provided that:

White Rose shall issue appropriate payroll checks, less all required tax deductions, for those former White Rose employees who elect to receive settlement money. The Company's contribution share for all federal, state and local payroll taxes, and F.I.C.A., shall be included in the $1,000,000.00 and $500,000.00 funds established in the Settlement Agreement. Accordingly, the settlement funds established by the Settlement Agreement which may go directly to former White Rose employees shall be reduced by the amount of such contributions.

As the Amendment did not contain language regarding membership ratification that was found in the original Settlement Agreement, it was not presented to the rank and file for ratification. On February 11, 1993, White Rose delivered to the Union its first installment of the settlement funds. In September 1993, White Rose delivered the second installment. Each of the 344 former employees who completed the withholding form received a total gross remuneration of $3,799.10. White Rose withheld Federal Unemployment Taxes ("FUTA"), State Unemployment Taxes ("SUI"), and Federal Insurance Taxes ("FICA") in the total amounts of $10,455, $82,677.67, and $99,977.11, respectively. The plaintiffs contend that the Settlement Agreement and the collective bargaining agreement required that membership ratification be obtained prior to the ratification of the Amended Settlement Agreement and prior to the disbursement of the settlement funds that withheld FUTA, FICA and SUI taxes.

The plaintiffs' original complaint named only the employer White Rose as a defendant and alleged that White Rose (1) wrongfully entered into an amendment to the settlement agreement that was not ratified by the rank and file; and (2)

wrongfully deducted the employer's share of payroll taxes from the $1,500,000 settlement funds.

On September 23, 1994, the Court granted White Rose's motion for summary judgment on the basis that the plaintiffs were required to pursue their claims against White Rose through Local 138 in arbitration. At that time, the Court noted that the plaintiffs could only proceed against White Rose for a breach of the agreement under section 301 of the LMRA if they also joined Local 138 in a "hybrid suit" for breach of its duty of fair representation by refusing to pursue the plaintiffs' claims. The plaintiffs initially declined to bring such a claim against its union, the Local 138. The plaintiffs also refused to attempt resolution of their dispute through the contractual grievance/arbitration procedure by asking Local 138 to pursue their complaint, stating that such a request would be "futile."

The plaintiffs moved for reconsideration of the grant of summary judgment. On February 27, 1995, the Court amended its September 23, 1994 decision to state that, under the relevant case law, it is not necessary for an employee to sue its union for breach of the duty of fair representation as a prerequisite of suing the employer directly. However, the Court held that summary judgment was still appropriate because even in the absence of a claim against the union, an employee-plaintiff must establish breach of the union's duty of fair representation as an essential element of the case to be proved when suing his employer directly. Because the plaintiffs declined to allege a breach of duty of fair representation by Local 138, the Court adhered to its prior granting of summary judgment to White Rose.

In September 1994, the plaintiffs formally requested the union to file a grievance against White Rose. The union undertook an investigation of the claim then responded, in a letter dated March 9, 1995, that it did not believe that a breach of contract had occurred, and that it would not pursue the matter to arbitration.

The plaintiffs then brought a second reconsideration motion, and on May 12, 1995, the Court again revisited its prior decisions. At that time, the plaintiffs submitted a letter dated March 6, 1995 from Daniel Clifton, Esq., Counsel for Local 138 stating that "Local 138 does not believe that a breach of contract has occurred, and it has declined to take this case to arbitration." In an Order dated May 12, 1995, the Court vacated its decisions of September 23, 1994 and February 27, 1995 and granted leave to the plaintiffs to serve and file a third amended complaint based on Local 138's express denial of the plaintiffs' request to arbitrate the matter of the disputed employer payroll taxes.

The plaintiffs' third amended complaint alleged causes of action against both White Rose and Local 138. As to Local 138, the third amended complaint alleged that the union breached its duty of fair representation: (1) by entering into the Amendment without ratification by the union membership; and (2) by refusing to pursue their claim to arbitration. As to White Rose, the third amended complaint alleged that White Rose breached its duty of fair representation: (1) by entering into the Amendment; and (2) by deducting certain withholding taxes from the settlement sum. In addition, the third amended complaint alleged that White Rose violated federal and state tax statutes including the FUTA, FICA and SUI, when it used settlement funds to pay its tax liability.

A. *The August 13, 1996 Decision*

On August 13, 1996, the Court granted summary judgment in favor of both defendants and dismissed the plaintiffs' third amended complaint. *See* 930 F.Supp. 814 (E.D.N.Y.1996). Analyzing the plaintiffs' claim that Local 138 breached the duty of fair representation when it executed the Amendment without membership ratification, the Court held that the six month statute of limitations necessitated dismiss-

al of the hybrid section 301/unfair representation claim. Specifically, the Court held that:

> [i]n the Court's view, the plaintiffs' cause of action against Local 138 based on breach of duty of fair representation for entering into the Amendment to the Settlement Agreement without notification to or approval by the members is time barred because it was not raised within six months of the time that the plaintiffs' knew or reasonably should have known of the claim. Summary judgment is granted in favor of Local 138 dismissing the plaintiffs' claim based on the union's execution of the Amendment to the Settlement Agreement, as barred, as a matter of law.

930 F.Supp. at 820.

As to the plaintiffs' second duty of fair representation claim against Local 138, namely, that the Local 138 failed to pursue the plaintiffs' challenge to the distribution of the settlement proceeds, the Court initially noted that "[the] claim, which is included in the plaintiffs' March 19, 1995 third amended complaint, is clearly not time barred." *Id.* (citation omitted). The Court, however, went on to add that:

> the facts alleged by the plaintiffs cannot support a DFR [duty of fair representation] claim against Local 138 for its March 1995 refusal to take action regarding the alleged wrongful disbursement of the settlement funds. The facially valid Amendment and the disbursements made pursuant to its terms are only called into question by reference to the union's conduct in agreeing to the tax allocation without member ratification. Because this conduct is outside of the limitations period, such reference is barred by [clearly established legal precedent].

*Id.* at 822. As such, the Court granted summary judgment in favor of Local 138, dismissing the complaint against it.

## B. The Second Circuit Decision of October 22, 1997

On appeal, the Second Circuit affirmed the Court's dismissal of the plaintiffs' claims against Local 138. Specifically, the Second Circuit held that the plaintiffs' claim that Local 138 breached its duty of fair representation by entering into the Amendment without ratification by the union membership was "time-barred by the six-month limit of *DelCostello*," 128 F.3d at 114 (referring to *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 [1983] ). Similarly, the Second Circuit held that this Court's dismissal of the plaintiffs' claim that the union breached its duty of fair representation by refusing to take its claim to arbitration, was "barred by the six-month limitations period of *DelCostello*." *Id.* at 115.

With regard to the section 301 claim against White Rose, this Court held that:

> based on the facts in this case, the plaintiffs cannot prove that Local 138 breached its duty of fair representation with regard to the plaintiffs' challenge to the distribution of the settlement funds. Here, the plaintiffs' case against White Rose cannot succeed, as a matter of law, in the absence of an essential element of their claim, namely, that the union breached its duty of fair representation. Accordingly, the motion by White Rose for summary judgment in its favor is granted and the claim that White Rose breached the agreements it entered into with the plaintiffs' authorized bargaining agent is dismissed.

930 F.Supp. at 823.

The Second Circuit, however, disagreed with this Court's rationale, and held that:

> [t]he fact that the plaintiffs are time-barred from bringing a claim against the union does not mean that the plaintiffs cannot prove that Local 138 breached its duty of fair representation in an action against White Rose.... [P]laintiffs suing under a § 301/DFR theory need not

sue their union at all: it could hardly be that running of the limitations period as to the union extinguishes the right of action against the employer. The fact that *DelCostello's* limitation period has expired as against Local 138 has no bearing on the validity of the plaintiffs' suit against White Rose.

128 F.3d at 115–16.

The Second Circuit added, however, that "we express no view as to whether the union's failure to submit the amendment for ratification or to challenge the disbursements when made (absent a demand from the membership at the time) amounts to a breach of the duty of fair representation." *Id.* at 116.

■ On remand, therefore, the essential issue for the Court's resolution is whether the plaintiffs have adequately raised a triable issue with regard to their claim that the Local 138 breached its duty of fair representation. A claim for breach of the duty of fair representation is an allegation that the union treated its members arbitrarily, discriminatorily, or in bad faith or acted to seriously undermine the integrity of the arbitration process. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

## II. DISCUSSION

### A. Summary Judgment Standard

A court may grant summary judgment only "when the evidence shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir.1999) (citing *Urena v. Biro Mfg. Co.,* 114 F.3d 359, 362 [2d Cir.1997] ); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996); Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *see Vann v. The City of New York,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir. 1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir. 1994).

It is within this framework that the Court addresses the present motion to dismiss.

**B.** *As to the Fair Representation Claim*

The duty of fair representation is a judicially created rule established due to the status of labor unions as the exclusive bargaining representative for all employees in a given bargaining unit. *See Peterson v. Kennedy,* 771 F.2d 1244, 1253 (9th Cir.1985). In *DelCostello, supra,* the Supreme Court explained the basis and scope of this duty:

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*DelCostello,* 462 U.S. at 164 n. 14, 103 S.Ct. at 2291 n. 14 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 [1967] ).

In order to prevail on a claim for a breach of fair representation, the Supreme Court has promulgated the *Vaca–Hines* test. "Two elements must be proven for a breach of duty of fair representation claim: The union's conduct must, first, have been 'arbitrary, discriminatory or in bad faith,' *Vaca v. Sipes,* 386 U.S. 171, 190 [87 S.Ct. 903, 916–17, 17 L.Ed.2d 842] (1967), and second, it must have 'seriously undermine[d] the arbitral process.'" *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567 [96 S.Ct. 1048, 1057–58, 47 L.Ed.2d 231] (1976); *see also Sim v. New York Mailers' Union No. 6,* 166 F.3d 465, 472 (2d Cir.1999); *Cruz v. Local Union No. 3,* 34 F.3d 1148, 1152 (2d Cir.1994); *Barr v.*

*United Parcel Service, Inc.,* 868 F.2d 36, 43 (2d Cir.1989).

Negligence or "tactical errors" on the part of the union are insufficient to establish a breach of the duty of fair representation. *See id.* In addition, "'as long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.'" *Cook v. Pan American World Airways, Inc.,* 771 F.2d 635, 645 (2d Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986) (quoting *Capobianco v. Brink's Inc.,* 543 F.Supp. 971, 975 n. 3 (E.D.N.Y. 1982)). "It is well established that while 'a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion', an employee does not have an absolute right to have his or her grievance taken to arbitration." *Vaca v. Sipes,* 386 U.S. at 191, 87 S.Ct. at 917. "The Supreme Court has long recognized that unions must retain wide discretion to act in what they perceive to be their members' best interests." *Peterson v. Kennedy,* 771 F.2d 1244, 1253 (9th Cir.1985); *see also Ford Motor Co. v. Huffman,* 345 U.S. 330, 337–38, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953).

To reiterate, the plaintiffs allege that the Local 138 breached its duty of fair representation when it executed the Amendment to the Settlement Agreement, dated January 19, 1993, and when it refused to take action on the plaintiffs' challenge to the distribution of the settlement funds in March, 1995.

Specifically, paragraphs 17 and 18 of the third amended complaint states that:

> at no time was the aforesaid Amendment to the Agreement ever presented or submitted by Local No. 138 to its aforesaid rank and file for their approval, vote, or ratification, as had been provided for the Agreement; nor did the aforesaid rank and file ever, at any time, ever approve, vote upon, or ratify the said Amendment.... [I]f the aforesaid

Amendment to the Agreement had been submitted for approval by Local No. 138 to its rank and file, it would not·have been approved by the rank and file.

■ The original Settlement Agreement expressly provided that it was subject to notification, ratification and approval by the eligible rank and file members of the Local 138. Also, it is uncontroverted that Local 138 failed to notify or seek ratification and approval of its members to the Amended settlement agreement, that resulted in the deduction of approximately $200,000 of the $1,500,000.00 settlement agreement funds. These facts raise material triable issues sufficient to defeat White Rose's motion for summary judgment. Surely, these acts, which the Second Circuit has held can be used against White Rose in the plaintiffs hybrid action, present genuine issues of material fact as to whether Local 138's conduct constituted the arbitrary, discriminatory or bad faith conduct described in *Vaca.*

Similarly, there are genuine issues of material fact as to the conduct of Local 138 when it failed to challenge, and in fact permitted the deduction made for taxes from the settlement funds. Also, whether Local 138 could reasonably believe that it had the authority to bind its membership, without its specific ratification, is another material issue of fact for the Court's resolution at trial. *See Kozera v. Westchester–Fairfield Chapter of Nat. Elec. Contractors Ass'n.,* 909 F.2d 48, 54 (2d Cir.1990). In *Kozera,* the Second Circuit held that an amendment to a labor agreement was valid, notwithstanding the fact that the amendment was not ratified by the union membership. However, in *Kozera,* the parties had a basis to "reasonably believe that officers of the local union had authority pursuant to the arbitration award to bind the union membership." *Id.* As stated above, whether Local 138 could reasonably believe that it had the authority to bind its members to the Amended Settlement Agreement, without their ratification, is a material triable issue of fact.

Accordingly, the Court finds that material issues of fact exist as to whether the Local 138 breached its duty of fair representation, thus permitting the plaintiffs to go forward with their Section 301 claim against White Rose. The Court, however, reserves the right to revisit this issue at trial in the context of a motion for judgment as a matter of law. The Court notes that White Rose's other arguments in support of its motion for summary judgment, seeking dismissal of the plaintiffs' Section 301 claim, are without merit.

C. *As to the Claim that White Rose Violated Several Tax Statutes*

As previously stated, the plaintiffs' allege that White Rose violated various tax statutes including FUTA, FICA and SUI when it withheld payroll taxes from the settlement funds. In this regard, the third amended complaint states that:

> The aforesaid deductions, as taken by White Rose, were in violation of applicable Internal Revenue Code and FICA statutes, were not authorized by the Agreement, and were never ratified or approved by the recipients of the payments. As a consequence of the foregoing, Defendant White Rose has violated applicable federal statutory law relative to FUTA, SUI and FICA deductions and has, as well, violated the Agreement.

The Court previously dismissed these various tax claims on the basis that they were "essentially a dispute over the terms of the Settlement Agreement. As such, it is part of the plaintiffs' Section 301 claim and is properly dismissed under the analysis set forth above." 930 F.Supp. at 824. In addition, the Court was of the view that "even considered as a cause of action based on some separate right, . . . no triable issue of fact [exists] based on the evidence before it." *Id.*

The Second Circuit disagreed, and held that the Court "erred when it dismissed plaintiffs' § 301 claim against White Rose;

therefore, a dismissal of the plaintiffs' tax claims on this basis was inappropriate.... [A] required step in the court's alternative reasoning was a holding on the issue of whether the monies put into the escrow account were 'wages,' yet this issue was neither contested nor patently obvious." 128 F.3d at 117. As such, the Second Circuit remanded the plaintiffs' tax claims against White Rose and posed the following two issues: "We note that at this point the issue of the plaintiffs' standing remains open, as does the issue of whether the monies in the escrow account were 'wages.' While these are matters of law, we will not opine them, as they were not treated by the district court and were not fully briefed in this court." *Id.*

■ While the original settlement agreement does not specifically address the issue of whether the settlement funds are "wages," the Court is of the view that such funds are, in fact "wages," as contemplated by the parties and the relevant case law, however sparse, and legislative history. In enacting the 1950 Amendment to the Social Security Act, the Senate Finance Committee stated, in pertinent part, that "a dismissal payment [any payment made by an employer on account of involuntary separation of the employee from the service of the employer] will constitute wages ... irrespective of whether the employer is, or is not, legally required to make such payment." *NYSA–ILA Container Royalty Fund v. Commissioner of Internal Revenue*, 684 F.Supp. 783, 785 (S.D.N.Y.1987) (quoting S.Rep. No. 1669, 81st Cong., 2d Sess., reprinted in 1980 U.S.Code Cong. & Admin. News 3287, 3374) (footnote omitted).

In addition to the case law and legislative history, the uncontroverted fact that White Rose required the members of the union to complete W–4 forms and thereafter used those forms to calculate employee withholdings, is another indication that the settlement funds were wages.

■ Finally, the Second Circuit noted in its decision that "at this point the issue of the plaintiffs' standing remains open...." 128 F.3d at 117. The Court interprets the Second Circuit's framing of the "standing issue," to pertain to whether a private cause of action exists against White Rose with regard to the deduction of payroll taxes from the settlement funds. The Court bases its interpretation from the following language that the Second Circuit used:

In the court below, the plaintiffs argued that White Rose violated ... [FUTA, FICA, and SUI] statutes when it used the settlement funds to pay its tax liability, and that they have *standing* to pursue a private right of action against White Rose for these violations. White Rose, in its motion for summary judgment, opposed these claims on the ground that the plaintiffs did not have *standing* to bring a private right of action for a violation of FUTA, FICA or SUI. The plaintiffs countered this argument by pointing to a federal district case from another circuit in which a private cause of action was allowed under FICA.

*Id.* at 116–17. (citations omitted) (emphasis added). Based on this language, the Court will consider whether the plaintiffs' have "standing" to pursue their causes of action which assert various federal and state tax violations. Stated in other words, the Court must determine whether a private cause of action exists under the various federal and state tax statutes including FUTA, FICA, and SUI. The Court finds that these statutes do not give rise to a private cause of action for the following reasons.

■ For there to be a private right of action, the Court must determine whether (1) the plaintiff is one of the class for whose special benefit the statute was enacted; (2) there is any indication of an explicit or implicit legislative intent to create or deny a private remedy; (3) implying a private remedy is consistent with the

underlying purpose of the legislative scheme; and (4) the cause of action is one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law. *See generally, Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *McClellan v. Cablevision of Connecticut, Inc.,* 149 F.3d 161, 164 (2d Cir.1998); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983).

It is clear that the tax statutes at issue are revenue-producing in nature and do not create a special benefit to the individual plaintiffs. The Court agrees with the decision of the Seventh Circuit Court of Appeals in *Edgar v. Inland Steel Co.,* 744 F.2d 1276, 1278 (7th Cir.1984), and finds its rationale applicable to FUTA, FICA and SUI. In *Edgar,* the Seventh Circuit stated that "[e]mployees have no cause of action against employers to recover wages withheld and paid over to the government in satisfaction of federal income tax liability." *Id.* at 1278. *See also Deleu v. Scaife,* 775 F.Supp. 712, 717–18 (S.D.N.Y.1991) (holding that both federal and state tax statutes are revenue production laws and not enacted for plaintiff's benefit.); *DiGiovanni v. City of Rochester,* 680 F.Supp. 80, 83 (W.D.N.Y.1988) (holding that if federal income tax statutes "are intended to benefit anyone, it is the Federal Government to whom the withheld tax is to be remitted. There is no indication anywhere in the language of the statutes that Congress intended to confer rights on employees with respect to the withholding of tax.").

As the Court finds that the tax statutes at issue are not intended for the benefit of the plaintiffs, the Court holds that a private cause of action cannot exist under the provisions of FUTA, FICA, or SUI. Accordingly, the Court grants the defendant's motion for summary judgment, dismissing the plaintiffs' cause of action asserting violations of various federal and state tax laws.

## III. CONCLUSION

Accordingly, having reviewed the submissions of the parties and the case file, and for the reasons set forth above, it is hereby

**ORDERED,** that the motion by the defendant White Rose for summary judgment, dismissing the plaintiffs' Section 301 cause of action is **DENIED;** and it is further

**ORDERED,** that the motion by the defendant White Rose for summary judgment, dismissing the plaintiffs' tax claims is **GRANTED;** and it is further

**ORDERED,** that this bench trial is placed on the Court's twenty-four (24) hour ready reserve non-jury calendar.

**SO ORDERED.**